UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE QUINTEN CROSS,<br><br>        Petitioner,<br><br>v.<br><br>A.M. GONZALES, Warden, et al.,<br><br>        Respondent. | Case No. 13-CV-2202-BAS (JMA)<br><br>**REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    Introduction

Petitioner Terrence Quinten Cross ("Petitioner"), a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. On January 31, 2012, Petitioner was convicted by jury in San Diego Superior Court case number SCD227465 for selling and possessing cocaine base (Cal. Health & Saf. Code § 11352(a), 11351.5). [Resp. Ans. at 1:2-4; Pet. at 2.] Petitioner contends the trial court abused its discretion, thereby violating his due process rights, by admitting evidence of a prior drug sale not relevant to material facts and more prejudicial than probative, to prove propensity for criminality. [Pet. at 6.]

/ /

The Court has considered the Petition and Memorandum of Points and Authorities in support thereof, Respondent's Answer and Memorandum of Points and Authorities, Petitioner's Traverse, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court recommends that the Petition be **DENIED**.

## II. Factual Background

The following statement of facts is taken from the California Court of Appeal opinion, <u>People v. Terrence Quinten Cross</u>, No. D061591, slip op. (Cal. Ct. App. April 5, 2013). [Lodgment No. 4.] This Court gives deference to state court findings of fact and presumes them to be correct. <u>Tilcock v. Budge</u>, 538 F.3d 1138, 1141 (9th Cir. 2008). Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. <u>Id.</u>; <u>see</u> <u>also</u> 28 U.S.C. § 2254(e)(1). The facts as found by the state appellate court are as follows:

### A. Factual Summary

Defendant's arrest arose from a "buy-walk" operation, in which undercover officers purchase drugs without immediately arresting the seller after the purchase. This operation permits undercover officers to preserve their true identities for continued undercover activities. Under the applicable procedures, an undercover officer will purchase drugs from a drug seller, and then walk away. Shortly after, uniformed police officers contact the suspected seller on a pretext and will obtain the seller's identity for later arrest. During this contact, the officer merely conducts a weapons patdown and does not engage in a full search.

In this case, the buy-walk undercover officer was San Diego Police Officer Joel Tien. In June 2011, Officer Tien called Eric Robertson and arranged to buy some drugs. When they met at 11th and C streets in the downtown San Diego area, Officer Tien asked Robertson to help him purchase a $20 amount of rock cocaine. Robertson agreed, and Officer Tien handed him a prerecorded $20 bill.

Officer Tien followed Robertson for a short while, and then saw Robertson speaking with a person later identified as James Morgan. Morgan led Robertson to the corner of 17th Street and Island Avenue, where defendant was standing.

Viewing the events from about 10 to 15 feet away, Officer Tien saw Morgan communicating with defendant. Officer Tien then observed defendant turn away, lift his shirt, lean over, and put his right hand towards the front of his pants. Officer Tien then saw defendant and Morgan (who were standing right next to each other) make motions as if they were exchanging something. Officer Tien saw Morgan turn around and place a white rock-like substance (later identified as rock cocaine) on a soup lid that Robertson was holding. Robertson then walked towards Officer Tien, and the officer took the cocaine from Robertson. Officer Tien also saw Robertson take out the $20 bill from Robertson's pocket, hand the currency to Morgan, who then handed the money to defendant. Officer Tien saw defendant physically take hold of the money.

As Officer Tien walked away from the group, Officer Tien gave Robertson a prerecorded $5 bill in response to Robertson's request for compensation for his assistance with the drug purchase.

Shortly after, Officer Tien radioed fellow police officers, described Morgan and defendant, and asked the officers to contact these two men for later arrest. Defendant was wearing a distinctive green shirt. Police Officer Dan Stanley responded, and contacted defendant for questioning on another subject matter and confirmed his identity. The officer conducted a patdown search of defendant only on areas where defendant could be hiding a weapon. The officer did not find any prerecorded money during this limited search. Officer Stanley then released defendant. Viewing the contact from a distance, Officer Tien confirmed that Officer Stanley had detained the correct individual who had sold the drugs. Another officer searched Morgan, and did not find any prerecorded money.

Defendant was later arrested for selling cocaine.

At trial, Officer Tien testified about the details of the transaction (as summarized above) and said he was 100 percent certain and there was "no doubt" in his mind that defendant was the person who gave the drugs to Morgan and that defendant received the $20 bill for the drugs. Officer Tien also testified as an expert witness explaining that drug dealers in this downtown area (known as the East Village) are aware of undercover police officer tactics, including the use of prerecorded money, and that sellers often use third party intermediaries (known as "facilitators") to avoid being arrested. Officer Tien also described the reasons and purposes of the buy-walk operation.

Over defense objections, San Diego Police Officer Jessie Zaldiver testified that while working undercover he purchased a similar amount of drugs from defendant at the same location about five years earlier.

Defendant did not testify or call witnesses, but his counsel challenged the prosecution's case on many grounds, including claiming that Officer Tien was biased and emphasizing there was no physical evidence to show defendant's involvement in the crime.

After deliberations, the jury found defendant guilty of possessing

   and selling the cocaine. The court imposed a seven-year sentence, which included the lower term for the cocaine sale, doubled because of a prior strike, plus a consecutive one-year term for a prior prison term finding.

[Lodgment No. 4 at 1-4.]

### III.  Procedural Background

On July 22, 2011, the District Attorney for the County of San Diego filed an Indictment charging Petitioner with two counts: Count One: selling/furnishing a controlled substance, cocaine base (Cal. Health & Saf. Code § 11352(a)); and Count Two: possession/purchase of cocaine base for sale (Cal. Health & Saf. Code § 11351.5). [Clerk's Transcript "CT" at 1-2.] On January 31, 2012, a jury found Petitioner guilty of the charges. [Resp. Ans. at 3:15-16.] Petitioner was sentenced on March 2, 2012 to state prison for the aggregate term of seven years, which was calculated as follows: the lower base term of three years was imposed for his conviction for selling cocaine base (Count One), which was doubled to six years under the One Strike Law; and a consecutive one-year term was imposed for the true finding he served a prison prior term within the meaning of Penal Code § 667.5(b). The sentence for his conviction of possessing cocaine base (Count Two) was ordered stayed pursuant to Penal Code § 654, as was the special allegation pertaining to that charge. [Lodgment No. 2 at 1.]

Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division One ("California Court of Appeal"). [Lodgment Nos. 1-4.] On April 5, 2013, in an unpublished opinion, the California Court of Appeal affirmed the judgment. [Lodgment No. 4.] Petitioner then filed a Petition for Review in the California Supreme Court on May 15, 2013 [Lodgment No. 5], which was denied without comment on June 19, 2013. [Lodgment No. 6.]

On September 13, 2013, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court. Respondent filed an

Answer on January 27, 2014, and Petitioner filed a Traverse on February 24, 2014.

## IV. Discussion

### A. Standard of Review

Title 28, United States Code, § 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The current Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if

>     the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); see also Lockyer v. Andrade, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-76); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early v. Packer, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court decision will not be "contrary to" clearly established federal law. Id.

### B.  Admission of Prior Bad Act Evidence

Petitioner contends that the trial court's admission of his 2006 drug sale into evidence violated his right to due process and deprived him of a fair trial. [Pet. at 6.] He argues the admission of the prior drug sale conviction was unduly prejudicial and the differences between the two drug sales undermined the probative value of the prior sale. [Id.; Lodgment No. 4 at 8.] Petitioner claims the jury likely improperly gave undue weight to the 2006 drug sale evidence, causing them to condemn Petitioner as a habitual drug dealer, rather than to evaluate whether he did in fact commit the charged offense. [Pet. at 6.] In denying Petitioner's claim, the California Court of Appeal stated:

> [Petitioner] argues the trial court erred in permitting the prosecution to present facts of a prior drug sale; in 2007 he was convicted of selling cocaine base to an undercover officer on the same street corner where the current alleged drug sale took place.
>
> 1. *Background*
>
> Before trial, the prosecutor requested the court's permission to introduce evidence of defendant's 2007 conviction for selling $20 worth of rock cocaine to an undercover officer on the same street corner where the current alleged drug sale took place. After extensive arguments and a motion for reconsideration, the court ruled the prosecution could present evidence of the prior sale and arrest to show defendant's knowledge of undercover operations and to establish a common plan or scheme to sell drugs. However, to avoid any undue prejudice, the court refused to permit the prosecution to present evidence that defendant was convicted of the prior drug sale or that police officers found prerecorded money in defendant's sock after he was arrested for the prior offense.
>
> Thereafter, the prosecutor called Officer Zaldivar, the undercover police officer in the prior drug sale. Before the testimony, the court instructed the jury on the limited purposes of the prior acts evidence (defendant's prior knowledge of police officer undercover tactics and defendant's use of a common scheme or plan). The court also admonished the jury that: "If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of selling cocaine base or possessing cocaine base for the purpose of sale. The People must still prove each charge and allegation beyond a reasonable doubt."
>
> Officer Zaldivar then testified that on November 8, 2006, while working undercover, he encountered defendant on 17th Street and Island Avenue. Officer Zaldivar made a hand signal indicating he wanted to buy $20 worth of cocaine base, and asked defendant if he had any drugs to sell. Defendant responded by asking, "Are you a police officer?" And after satisfying himself with Officer Zaldivar's answer, he walked south with Officer Zaldivar and reached into his pocket and asked Officer Zaldivar for money. Officer Zaldivar gave him four prerecorded $5 bills. In exchange, defendant took a rock cocaine substance out of his pocket and placed it in the officer's hand.
>
> At the conclusion of the evidence in the current trial, the court repeated its earlier instruction regarding the relevance of Zaldivar's testimony. During closing arguments, both prosecutor and defense attorney also cautioned the jury as to the limited purpose of Zaldivar's testimony. The prosecutor argued that the jury could consider the evidence

to infer that defendant's common plan was to sell the cocaine because of the similarities between the prior sale and the current sale ("same quantity, $20, same controlled substance, crack cocaine, same exact street corner, 17th and Island...) And to show defendant's knowledge of the undercover tactics used by law enforcement officers to explain why no money was found on his person. i.e., that he quickly hid the money or transferred it shortly after the sale. But the prosecutor devoted most of his argument in discussing Officer Tien's eyewitness testimony, and emphasized that the prior drug sale evidence was only a "very small" part of the prosecution's case.

Defense counsel likewise told the jury it could not consider the prior-sale evidence to infer that "because [defendant] did it before, that he's guilty again, and reiterated that the jury was permitted to consider the evidence only "for the limited purpose of deciding whether or not [defendant] knew about the undercover tactics... when he allegedly acted in the case or whether [defendant] had a common plan or scheme to commit the offenses alleged."

2. *Applicable Law*

Generally, evidence of the defendant's other crimes or misconduct is inadmissible when it is offered to show the defendant had the criminal propensity to commit the charged crime. (Evid. Code, § 1101, subd. (A).) However, prior acts evidence may be admitted when relevant to prove some other fact, such as knowledge or common plan. (Evid. Code, § 1101, subd. (B); see People v. Ewoldt, 7 Cal.4th 380, 393-403 (1994). If the evidence is admissible on a proper basis, the court should conduct a section 352 balancing analysis to ensure there is no undue prejudice. (People v. Lindberg, 45 Cal.4th 1, 22-23 (2008).) Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded"...." (People v. Fuiava, 53 Cal.4th 622, 667 (2012).) We review the trial court's rulings on the admission of evidence under sections 1101 and 352 for abuse of discretion. (Id. at pp. 667-667.)

3. *Analysis*

The trial court found the evidence of defendant's prior drug sale was admissible to show the existence of a common plan or scheme and to show defendant's knowledge of undercover operations. The court's conclusions were proper and did not constitute an abuse of discretion. The court also did not err in refusing to exclude the evidence under section 352.

With respect to common plan, the evidence of a very similar prior drug sale at the same location supported an inference that defendant was engaged in a plan or scheme to sell drugs at this location, and therefore the current offense was part of

> that plan. (See Ewoldt, *supra*, 7 Cal.4th at pp. 393-403.) ... In this case, defendant claimed the prosecution did not prove he participated in the drug sale. The evidence of defendant's prior drug sale was relevant to refute this defense and establish defendant's involvement in the drug transaction. The evidence supported an inference that defendant was involved in a plan to sell drugs and that the transaction with Morgan was part of this plan.
>
> ... In both instances, defendant was at the same exact location (17th Street and Island Avenue), and thus it can be inferred he was using this corner as his home base to engage in street drug sales. In addition, defendant was carrying drugs on his person, had a $20 amount of unwrapped rock cocaine, and was wary of undercover police officers. ... The trial court found the evidence "clearly falls within the exception common plan or scheme because it's the same behavior, same location, allegedly, from the prior conviction." The court did not abuse its discretion in admitting the evidence on this basis.
>
> Defendant also challenges the court's admission of the prior sale evidence to show his awareness of law enforcement undercover tactics. However, the evidence was strongly probative to show defendant's knowledge of undercover operations in the East Village area to explain why defendant sold the drugs through facilitators and why defendant did not have the prerecorded money on him when he was searched. The prior sale evidence helped the jury understand defendant's actions and was relevant to establish that defendant committed the crime even if he did not have the prerecorded money in his pocket shortly after the transaction and did not directly sell drugs to Officer Tien. ...
>
> Defendant additionally contends that even if the evidence was relevant and material on common plan and knowledge grounds, the court should have excluded the evidence under Evidence Code § 352. ... On our review of the record, we conclude the court did not abuse its discretion in refusing to exclude the evidence under § 352. As explained above, the prior drug sale evidence was strongly probative of a common design or plan and defendant's knowledge of undercover operations to explain his actions. On the other hand, the danger of unfair prejudice or jury confusion was limited. The prior drug sale evidence was brief and straightforward, and was not particularly egregious or likely to inflame the jury against defendant.

[Lodgment No. 4 at 4-11.]

The admission of evidence is an issue of state law. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). "Simple errors of state law do not warrant federal habeas relief." Id. (citing Estelle v. McGuire, 502 U.S.

62, 67 (1991)). On federal habeas, the sole issue is whether the petitioner's conviction violated constitutional norms. Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Reiger v. Christensen, 789 F.2d 1425, 1430 (9th Cir. 1986) ("The dispositive issue is . . . whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.") (internal quotations omitted).

"A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). "Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101. There is no clearly established Federal law, as determined by the U.S. Supreme Court, on the issue of whether "admission of irrelevant or overtly prejudicial evidence constitutes a due process violation." Id. Thus, it cannot be said that the California Court of Appeal's rejection of the claim in this instance was contrary to, or an unreasonable application of, clearly established federal law.

Furthermore, pursuant to Jammal, "[o]nly if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." Jammal, 926 F.2d at 920. "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." Id. In such cases, the jury must be relied upon to sort out the inferences in light of the court's instructions. Id. Here, as the trial court determined, there were rational inferences, not constitutionally impermissible, that the jury could draw from the 2006 drug sale evidence, namely that Petitioner was involved in a

common plan or scheme to sell drugs, and Petitioner was in possession of knowledge regarding undercover police tactics. Both could be inferred based upon the similar methodology to sell cocaine in each instance. Specifically, in both instances, defendant was at the same exact location (17th Street and Island Avenue), was carrying drugs on his person, had a $20 amount of unwrapped rock cocaine base, and was wary of undercover police officers." [Lodgment No. 4 at 9; Ans. at 11:13-25.] Further, the prior 2007 conviction, where Petitioner personally exchanged cocaine base for money with Officer Zaldivar, creates the permissible inference Petitioner was knowledgeable of police undercover operations at the time of the instant drug sale. [Ans. at 11:18-21.]

"One typical - and constitutionally permissible - way to [prove that the defendant committed the crime charged] is to show that the crime shared certain characteristics - a modus operandi - with other crimes that [the defendant] had committed." Boyde, 404 F.3d at 1172 (citing United States v. Sidman, 470 F.2d 1158, 1166 (9th Cir. 1972)). Such a showing "makes it more likely that [the defendant] was involved when a crime sharing those characteristics occurred later." Id. (citing McKinney v. Rees, 993 F.2d 1378, 1382 (9th Cir. 1993)). Because the jury could draw permissible inferences from the 2006 drug sale, admission of that evidence did not violate due process, even if there existed an impermissible inference, so long as the jury was instructed that it could not draw any improper inferences from it. The trial judge gave a limiting instruction to the jury:

> The People presented evidence that the defendant committed the offense of selling cocaine base that was not charged in this case.
>
> You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact

```
        is true.

        If the People have not met this burden, you must disregard this
        evidence entirely.

        If you decide that the defendant committed the uncharged offense,
        you may, but are not required to, consider that evidence for the
        limited purpose of deciding whether or not:

              The defendant knew about the undercover tactics of Team
              8 when he allegedly acted in this case; or

              The defendant had a common plan or scheme to commit the
              offenses alleged in this case.

        If you conclude that defendant committed the uncharged offense,
        that conclusion is only one factor to consider along with all the
        other evidence.  It is not sufficient by itself to prove that the
        defendant is guilty of selling cocaine base, or possessing cocaine
        base for the purpose of sale.  The People must still prove each
        charge and allegation beyond a reasonable doubt.
```

[CT Vol. 1 at 68.]

Additionally, to avoid any undue prejudice, the court refused to permit the prosecution to present evidence that defendant was convicted of the prior drug sale or that police officers found prerecorded money in defendant's sock after he was arrested for the prior offense. [Lodgment No. 4 at 5.] The Court must presume that the jury followed the instructions to consider only the permissible inferences (see Boyde, 404 F.3d at 1173), and thus the Court concludes that admission of evidence about the prior drug sale did not violate Petitioner's due process rights.

Accordingly, this Court recommends that this claim be denied.

## V.     Recommendation

After a thorough review of the record in this matter, the undersigned magistrate judge finds Petitioner has not shown that he is entitled to federal habeas relief under the applicable legal standards and, accordingly, the undersigned magistrate judge hereby recommends that the Petition be **DENIED WITH PREJUDICE** and that judgment be entered accordingly.

/ /

This Report and Recommendation is submitted to the Honorable Cynthia Ann Bashant, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  **IT IS ORDERED** that not later than **September 5, 2014**, any party may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  **IT IS FURTHER ORDERED** that any reply to the objections shall be served and filed not later than **September 15, 2014**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: August 14, 2014

Jan M. Adler
U.S. Magistrate Judge